STATE of Alaska, COMMERCIAL FISH-
ERIES ENTRY COMMISSION,
Appellant,

v.

Phillip M. TEMPLETON, Appellee.

No. 4042.

Supreme Court of Alaska.

Aug. 3, 1979.

As Amended on Denial of Rehearing
Sept. 4, 1979.

Peter B. Froehlich, Jon Tillinghast, Asst. Attys. Gen., and Avrum M. Gross, Atty. Gen., Juneau, for appellant.

Brad J. Brinkman, Alaska Legal Services Corp., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, and BURKE, JJ., and DIMOND, Senior Justice.

## OPINION

BOOCHEVER, Justice.

The Commercial Fisheries Entry Commission appeals a judgment of the superior court ordering it to award certain classification points and an entry permit to Phillip Templeton. For the reasons set forth in Part III below, we affirm.

## I. STATUTORY AND REGULATORY BACKGROUND

In 1973, the Limited Entry Act, AS 16.43, was passed by the Alaska Legislature [1] for the purpose of regulating and controlling entry into the commercial fisheries "in the public interest and without unjust discrimination." AS 16.43.010. The Act established the Alaska Commercial Fisheries Entry Commission which promulgated a point classification system to weigh the relative hardship which applicants for entry permits would suffer by exclusion from the fisheries. AS 16.43.020. The legislature specified that the Commission should "define priority classifications of similarly situated applicants based on a reasonable balance" of economic dependence on and past participation in the fishery. AS 16.43.250(a).[2] Sections 20 AAC 05.620 and 20 AAC 05.630(b) of the regulations adopted by the Commis-

---

1. Ch. 79, § 1, SLA 1973.

2. AS 16.43.250(a) provides:

 Following the establishment of the maximum number of units of gear for a particular fishery under § 240 of this chapter, the commission shall adopt regulations establishing qualifications for ranking applicants for entry permits according to the degree of hardships which they would suffer by exclusion from the fishery. The regulations shall define priority classifications of similarly situated ap-

 plicants based upon a reasonable balance of the following hardship standards:

 (1) degree of economic dependence upon the fishery, including but not limited to percentage of income derived from the fishery, reliance on alternative occupations, availability of alternative occupations, investment in vessels and gear;

 (2) extent of past participation in the fishery, including but not limited to the number of years participation in the fishery, and the consistency of participation during each year.

sion establish the means to measure economic dependence. Templeton contends that he was entitled to more points than granted by the Commission under these provisions.

Section 620(1) provides that

the commission will rank an applicant based on the two factors of percentage of income derived from the fishery and reliance on alternative occupations by considering the relation between "annual catch value" and "nonfishing occupational income," expressed as an "income dependence percentage," as these terms are defined in sec. 660 of this chapter. Points for income dependence will be awarded only to applicants who harvested the fishery resource commercially while participating as a gear license holder during a year in which income dependence is claimed. A higher income dependence percentage indicates a higher degree of economic dependence upon the fishery.[3]

Section 630(b) provides for points for income dependence as follows:

(1) income dependence percentage based on harvesting the fishery resource while participating as a gear license holder in the fishery applied for . . . .

[a schedule for minimum percentages for the years 1971 and 1972 is set forth]

(2) if special circumstances exist such that an applicant's income dependence is not realistically reflected by his income dependence percentage for the years 1971 and 1972, the commission may award an applicant up to a maximum of 10 points based on a special showing of income dependence; . . .

At issue is whether the "special circumstances" provision of section 630(b)(2) is applicable only to those who had gear licenses in the specified years.

## II. TEMPLETON'S HISTORY

Phillip Templeton and his brother have fished together commercially as partners every year from 1969 to 1974. In 1969, 1971 and 1972, the brother's name was on the gear license. In 1970, 1973 and 1974, Templeton appeared as the named licensee. In the years his brother was on the license, Templeton had a commercial fishing license. There was no particular arrangement between them regarding the purchase of the gear license. Both invested in vessels and gear; both fished full time. To the extent that there is any difference between their levels of involvement, Templeton appears to have invested more time and money than did his brother. The brother was awarded an entry permit. Templeton was not. The reason for this disparity is that Templeton did not receive income dependence points for 1971 and 1972, the key years under the Commission's regulations, because his brother held the gear license.

Templeton's application for a statewide power gurdy troll entry permit claimed 26 points. The Commission's initial determination verified 16 points. Entry permits were being awarded to all applicants with 20 or

---

**3.** Section 20 AAC 05.660 reads, in pertinent part:

DEFINITIONS. In secs. 600 and 660 of this chapter

(1) "annual catch value" means the number of pounds of any species of fish caught by an applicant in the fishery for which he is applying, as derived from fish tickets, during a given year, multiplied by the average price per pound paid for the species in that fishery during the year, or the gross amount actually received for the calendar year from harvesting the fishery resource commercially while participating as a gear license holder in the fishery for which he is applying;

(2) "income dependence percentage" means the annual catch value divided by the sum of the annual catch value and the non-fishing occupational income, with the result multiplied by 100;

(3) "nonfishing occupational income" means that portion of earned income that comes from sources other than commercial fishing. It includes gross wages, salaries, professional fees and other amounts received as compensation for personal services actually rendered including cost of living allowances. In the case of an applicant engaged in a trade or business other than commercial fishing, the net profits of such trade or business shall be included as nonfishing income. Pensions, interest, dividends, other investment income, and income received directly from participating in any fishery as a gear license holder or crewman will not be included.

more verified points. 20 AAC 05.640(a). Templeton requested and received a hearing before one of the Commission's hearing officers. The hearing officer recommended awarding Templeton an additional 10 points for income dependence in 1971 and 1972, under the special circumstances provision, 20 AAC 05.630(b)(2). The Commission rejected the hearing officer's recommendation, finding that a gear license was a necessary prerequisite to special consideration under section 630(b)(2). On appeal, the superior court substituted its judgment, adopted the reasoning of the hearing officer, and reversed the Commission, ordering that the contested points and an entry permit be awarded.

## III. RESOLUTION OF THE COMMISSION'S APPEAL

A. Proper Standard of Review:

■ On appeal to this court, the Commission claims that the superior court applied the incorrect standard of review, and that, under the appropriate test, the Commission should have been affirmed. The Commission's position is that "the only possible question of law that could have been involved was the interpretation and application of the Commission's own regulations." This, it is urged

> is certainly a matter involving the Commission's expertise on the complex specialized matter of fishermen's qualifications for entry permits and formation of basic policy concerning allocation of permits.

If the Commission is correct in its analysis of the proceedings before it, then Judge Stewart erred in substituting his judgment for that of the Commission. *See Swindel v. Kelly,* 499 P.2d 291, 298 (Alaska 1972).[4] Tested, however, on the basis of what the

4. In *Jager v. State,* 537 P.2d 1100, 1107 n.23 (Alaska 1975) (citations omitted), we noted the development of four principal standards of review of administrative decisions:

These are the "substantial evidence test" for questions of fact; the "reasonable basis test" for questions of law involving agency expertise; the "substitution of judgment test" for

Commission actually did, rather than on some *post hoc* rationalization, its argument fails. The Commission's assertion that "there is no question of interpretation of a statutory . . . provision" is belied by the facts. It is clear from a most cursory reading of the Commission's decision in this case that at its nucleus was the Commission's interpretation of the statutory scheme. The decision states:

> The Legislature's concern about relative hardship among those to be excluded from the fishery was directed at gear-license operators, i. e., at units of gear that would be excluded. . . . It is for that reason that relative past participation and relative income dependence are measured by relationship to holding a gear license. The "hardship" related to "exclusion" has no reference to any other category, for neither "exclusion" nor "hardship" as those terms are used in the act occur[s] with respect to any other category.

Thus, the Commission interpreted the legislative intent of the Limited Entry Act, and on that interpretation, based its interpretive ruling that 20 AAC 05.630(b)(2) applies only to gear license holders. There is no indication in the Commission's decision that its interpretation of the statutes and regulations involved formulation of fundamental policy or the particularized expertise and experience of administrative personnel. Judge Stewart was free to substitute his own judgment as to the proper interpretation of the Act. *Kelly v. Zamarello,* 486 P.2d 906, 916 (Alaska 1971).[5] Insofar as its interpretation of the regulation is based solely on the interpretation of the Act, no additional deference is due the Commission.

■ In a nutshell, the Commission did not use its expertise to define "hardship," but rather made a judgment regarding

questions of law where no expertise is involved; and the "reasonable and not arbitrary test" for review of administrative regulations.

5. We recently upheld the substitution of judgment test for statutory interpretation in *Wien Air Alaska v. Arant,* 592 P.2d 352, 356 (Alaska 1979).

"[t]he Legislature's concern about relative hardship." Judge Stewart was in just as good a position to make that judgment as the Commission. Similarly, since a question of statutory interpretation is involved, this court will independently evaluate the trial court's interpretation.[6]

## B. Interpretation of the Regulation:

The Commission claims that the superior court erred in its interpretation of the regulations. We agree with Judge Stewart's interpretation. Like him, we are persuaded by the reasoning of the hearing officer that Templeton's participation in 1971 and 1972 was that of an owner and operator of gear, rather than that of a crew member, that 20 AAC 630(b)(2) is designed to govern all situations not specifically covered by the regulations proper, and that Templeton qualifies for serious consideration under section 630(b)(2).

 Moreover, the regulations must be read so as to be consistent with the Act. AS 16.43.010(a) sets forth the purpose of the Act:

> It is the purpose of this chapter to promote the conservation and the sustained yield management of Alaska's fishery resource and the economic health and stability of commercial fishing in Alaska by regulating and controlling entry into the commercial fisheries in the public interest *and without unjust discrimination.* [emphasis added]

While a gear license may be a good general indicator of ownership and operation of gear for the purpose of weighing relative hardship,[7] to foreclose automatically consideration of special circumstances under 20 AAC 05.630(b)(2) in the absence of a gear license would result, in many cases, such as

the one at bar, in unjust discrimination. The Commission was properly concerned with the problem of proliferation of gear operating in the fisheries. Unfortunately, allocating one permit between two partners [8] solely on the fortuitous circumstances of which one held the gear license in two given years does not realistically weigh the relative hardship which each partner would suffer by denial of a permit. In this case, the construction of the statutes and the regulations that the Commission suggests works at cross-purposes with the Legislature's stated intent to avoid "unjust discrimination." AS 16.43.010(a).

The judgment and order of the superior court are AFFIRMED.

MATTHEWS, J., not participating.

---

6. *See, e. g., Peters v. Juneau-Douglas Girl Scout Council,* 519 P.2d 826, 834 (Alaska 1974).

7. AS 16.43.250(a)(1) directs the Commission to evaluate "investment in vessels and gear" as a factor in determining an applicant's economic dependence on fishing.

8. In Templeton's case and in other decisions (*e. g.,* No. 75 59, Dec. 15, 1976), the Commission

has interpreted the Limited Entry Act as authorizing issuance of a permit only to an individual, natural person, and not to partners, a partnership, or a corporation, AS 16.43.380(5); the Commission believes that the law of partnership independently makes persons who were formerly partners equal beneficial owners of licenses. Templeton has not challenged this interpretation before us or below. We therefore do not review that question.