COMMERCIAL FISHERIES ENTRY
COMMISSION, State of
Alaska, Petitioner,

v.

John APOKEDAK, Respondent.

No. 6766.

Supreme Court of Alaska.

March 2, 1984.

Deborah Vogt, Asst. Atty. Gen., Juneau, Wilson L. Condon, Atty. Gen., Juneau, for petitioner.

David B. Snyder, Don Cooper, Alaska Legal Services Corp., Dillingham, for respondent.

Before BURKE, C.J., RABINOWITZ and MATTHEWS, JJ., and DIMOND,* Senior Justice.

## OPINION

MATTHEWS, Justice.

AS 16.43.260(a) provides that the Alaska Commercial Fisheries Entry Commission

---

* Dimond, Senior Justice, sitting by assignment made pursuant to Article IV, section 11, of the Constitution of Alaska.

"shall accept applications for entry permits only from applicants who have harvested fishery resources commercially while participating in the fishery as holders of gear licenses issued under AS 16.05.536–16.05.-670 ... before the qualification date established in (d) or (e) of this section." In our first opinion in this case, *Commercial Fisheries Entry Commission v. Apokedak*, 606 P.2d 1255, 1264, 1268 (Alaska 1980), we held that the requirement that applicants be holders of gear licenses does not violate the equal protection clause of the fourteenth amendment to the United States Constitution or the equal protection provisions of article I, section 1 of the Alaska Constitution. Apokedak's contention that he was in fact a holder of a gear license because he was a full partner with a gear licensee before the qualification date

was remanded for determination. *Id.* at 1268.

On remand, the Commission found that Apokedak and George Wilson were partners during 1970 and 1971 and that partnership assets were used to purchase the vessel and gear licenses for those years. However, Wilson, and not Apokedak, was named as the gear licensee. The Commission concluded that the term "holders of gear licenses" used in AS 16.43.260(a) referred only to individual named licensees and that therefore Apokedak was ineligible to apply for an entry permit.[1] On appeal the superior court reversed, holding that it was necessary to interpret the term "holders of gear licenses" to include Apokedak in order to avoid unjust discrimination. In so concluding the court found guidance in *State v. Templeton*, 598 P.2d 77 (Alaska 1979).[2] The court thereupon remanded

---

1. The Commission's opinion states in part:

 George Wilson was a licensed gear operator. John Apokedak was not. Without John Apokedak onboard the fishing vessel, George Wilson could legally continue fishing. Without George Wilson onboard, John Apokedak could not legally continue fishing. Prior to April 15 of any year, John Apokedak could have obtained a gear license. After April 15, John Apokedak could not have achieved the status of gear operator without effecting a license transfer at the request of a gear licensee and for reasons specifically allowed in AS 16.05.670(a). No such attempted transfer has been alleged. John Apokedak, lending institutions, processors, venture capitalists, and potentially many others may have been owners or lessees of gear or partners in a commercial fishing operation, but they were not legally licensed gear operators.

 AS 16.43.260 authorizes the commission to accept applications only from persons who have commercially harvested fish as holders of gear licenses issued under the above-discussed statutes. We find that those statutes authorize the operation of gear only by the named licensee. We find that the statutes, by their clear language, grant a personal and individual privilege, and that the operation of gear in the absence of the named licensee was illegal. The Limited Entry Act has attached an additional right or privilege to the benefits previously granted by the issuance of a gear license: the eligibility to apply for an entry permit. We find that the eligibility to apply for an entry permit is restricted under AS 16.43.260(a), to precisely the same degree that the operation of gear was historically limited; that is, to the *individual* in whose name the

 license was issued. Neither the gear license statute nor the eligibility provision of the Limited Entry Act reach the partner or any other associate of the named licensee.

 . . . .

 The provisions of AS 16.43.260(a) should be interpreted to mean what the common reading would lead a reasonable person to conclude. The facts are that gear licenses have been in existence since before Statehood. They were, without known exception, issued one to the person. Without the benefits of gear licensure an individual was legally precluded from operating a unit of commercial fishing gear. After April 15 an individual could not attain the status of gear license holder in a salmon net fishery without having an existing license voluntarily transferred to him. The Legislature was surely aware of the prevalence of partnership arrangements extant in the industry, and did not provide specifically for their existence.

 (Emphasis in original.)

2. The court's decision and order states in part:

 Although [*State v. Templeton*, 598 P.2d 77 (Alaska 1979)] differs in minor factual ways from [this case,] the distinctions are not substantively significant. Both Templeton and Apokedak were equal partners and owners and operators of gear, and both received different treatment than their partners because of the Commission's literal interpretation of the term "gear license holder." In neither case did the evidence show significant differences between the functions performed in the fishery by the partner named on the gear license and the partner not so named.

Apokedak's application to the Commission for processing.

From this action the Commission has petitioned this court for review. We have granted review and we now reverse the decision of the superior court.

■ In our view, the term "holders of gear licenses" can only be reasonably construed to refer to individual named licensees. As of the enactment of the Limited Entry Act in 1973, of which AS 16.43.260(a) is a part, a gear license was a personal license. Gear could not be fished except in the presence of the named licensee; and the gear license could not be transferred except to alleviate hardship due to the inability of the licensee to continue fishing. AS 16.05.670. When the legislature limited the right to apply for an entry permit to "holders of gear licenses issued under AS 16.05.536–16.05.670 ...", it meant the individuals who had been issued gear licenses under those statutory sections; not such individuals and their partners as well.

At the inception of the limited entry system, the legislature intended that "the commission would issue entry permits *at the present level of fishing effort ...*" (emphasis added) 1973 House Journal 503, *quoted in, Rutter v. Commercial Fisheries Entry Commission,* 668 P.2d 1343, 1347 (Alaska 1983). As we noted in *Rutter,* "the legislature intended the number of permits initially issued to reflect actual use...." *Id.* The Commission in this case has found that the existence of partnership arrangements in the fishing industry was "prevalent" as of the enactment of limited entry. If partners of gear license holders were eligible to

apply for permits this would result in the issuance of substantially more permits than there were gear licenses as of the inception of the limited entry system. This would be inconsistent with the intent of the legislature.

■ Apokedak argues that a literal construction of AS 16.43.260(a) should not be applied because doing so would result in unjust discrimination. In this regard he relies on the preamble to the Limited Entry Act, AS 16.43.010(a), which states the reasons for the operative provisions which follows:

It is the purpose of this chapter to promote the conservation and the sustained yield management of Alaska's fishery resource and the economic health and stability of commercial fishing in Alaska by regulating and controlling entry into the commercial fisheries in the public interest and without unjust discrimination.

However, this position is largely foreclosed by our prior decision in this case.[3] We held there that the requirement that applicants for entry permits be past gear licensees bore "a fair and substantial relationship to the purpose of preventing unjust discrimination in allocating entry permits...." *Commercial Fisheries Entry Commission v. Apokedak,* 606 P.2d 1255, 1268 (Alaska 1980). It would be inconsistent to hold that the gear license requirement furthers the purpose of avoiding unjust discrimination with respect to Apokedak's constitutional claims while holding that the same statutory requirement cannot be literally interpreted because such an interpretation would work unjust discrimination.[4]

---

.... Given the Supreme Court's decision and reasoning in *Templeton,* the question is whether that case can be distinguished from this in any way which would disqualify Apokedak's application. There is no way to do so which would not involve unfairly discriminating against Apokedak. AS 16.43.260 must be interpreted to allow him the same status as his partner.

*Apokedak v. Comm'l Fisheries Entry Comm'n,* No. 3AN–77–5710 C.A. (Alaska Super., March 31, 1982).

**3.** Further, a statutory preamble such as that contained in AS 16.43.010(a) "can neither restrain nor extend the meaning of an unambiguous statute; nor can it be used to create doubt or uncertainty which does not otherwise exist." 2A C. Sands, Statutes and Statutory Construction § 47.04 (1973).

**4.** We rejected a somewhat similar argument in *Rose v. Commercial Fisheries Entry Commission,* 647 P.2d 154, 162 (Alaska 1982), stating:

In large part, Rose's disagreement with the Commission's interpretation of what consti-

*State v. Templeton,* 598 P.2d 77 (Alaska 1979) is not authority to the contrary. Templeton had held a gear license during a number of years, and thus his application had been accepted by the Commission pursuant to AS 16.43.260(a). Once an application was accepted the Commission ranked the applicant under regulations adopted pursuant to AS 16.43.250 "according to the degree of hardship which they would suffer by exclusion from the fishery."[5] AS 16.43.250 does not list being a holder of a gear license as a relevant hardship standard. Involved in *Templeton* was regulation 20 AAC 05.630(b). Regulation 20 AAC 05.630(b)(1) provides for the award of income dependence points in 1971 and 1972 to gear license holders. Templeton was in partnership with his brother during those years, with his brother as the named licensee. Thus, Templeton did not argue that he was entitled to points under that regulation. Rather, he argued that he was entitled to an award of income dependence points under 20 AAC 05.630(b)(2), which provides:

> [I]f special circumstances exist such that an applicant's income dependence is not realistically reflected by his income dependence percentage for the years 1971 and 1972, the commission may award an applicant up to a maximum of 10 points based on a special showing of income dependence; . . .

The Commission concluded that this regulation applied only to those who had held gear licenses in the specified years. This conclusion was in accordance with 20 AAC 05.620(1), which states that "[p]oints for income dependence will be awarded only to applicants who harvested the fishery resource commercially while participating as a gear license holder during a year in which income dependence is claimed." On appeal we reversed, holding that awards of income dependence points under 20 AAC 05.630(b)(2) should not be limited to persons who had held gear licenses in 1971 and 1972. In so doing, we noted that denying income dependence points to Templeton would conflict with the legislature's stated intent of avoiding unjust discrimination, set forth in the preamble to the Limited Entry Act, AS 16.43.010(a). The effect of our decision was thus to invalidate the above quoted language of 20 AAC 05.620(1).

 However, *Templeton* is distinguishable from the present case in that it concerned administrative regulations promulgated pursuant to the Limited Entry Act rather than the Act itself. This court reviews administrative regulations to ascertain whether they are consistent with the purposes of the statutory provisions conferring rule making authority on the agency in question. *Kelly v. Zamarello,* 486 P.2d 906, 911 (Alaska 1971). Thus, there was occasion in *Templeton* to refer to the general purpose of avoiding unjust discrimination set forth in AS 16.43.010(a). Here, by contrast, our function is judicial review of a statute rather than a regulation. In approaching this function it is our obligation to ascertain the meaning of the statute. In accomplishing this task our pri-

---

tutes "special circumstances" merely restates the equal protection argument addressed previously. It would, indeed, be anomalous to hold that the Commission's regulatory response to the 1972 administrative closure did not deprive first-year gear holders of equal protection of the law, yet at the same time hold that the Commission must award discretionary "special circumstances" points to these very same parties out of concern for the disproportionate impact of the regulations.

**5.** AS 16.43.250(a) provides:
Following the establishment of the maximum number of units of gear for a particular fishery under AS 16.43.240, the commission shall adopt regulations establishing qualifications for ranking applicants for entry permits according to the degree of hardship which they would suffer by exclusion from the fishery. The regulations shall define priority classifications of similarly situated applicants based upon a reasonable balance of the following hardship standards:
(1) degree of economic dependence upon the fishery, including but not limited to percentage of income derived from the fishery, reliance on alternative occupations, availability of alternative occupations, investment in vessels and gear;
(2) extent of past participation in the fishery, including but not limited to the number of years participation in the fishery and the consistency of participation during each year.

mary guide is the language used, construed in light of the purpose of the enactment.[6] As indicated above, we have no doubt but that the legislature was referring to individual named licensees in using the phrase "holders of gear licenses," and that the legislative purpose was that the Commission would initially issue entry permits reflecting existing fishing levels.

For the foregoing reasons we REVERSE the decision of the superior court.

COMPTON and MOORE, JJ., not participating.

DIMOND, Senior Justice, dissenting.

I dissent from the majority's conclusion that Apokedak is not a gear license holder within the meaning of AS 16.43.260(a) and therefore may not apply to the Commercial Fisheries Entry Commission (the Commission) for a limited entry permit.

Both the Commission and the superior court found that John Apokedak and his brother-in-law, George Wilson, were full partners during 1970 and 1971. The two men contributed equally to the purchase of their vessel, their gear and the gear license itself. They shared expenses and profits from the fishing business, and participated jointly in management decisions. They intended to act, and did act, as partners because neither man could meet the expense and risk of operating the business by himself. Nevertheless, the Commission decided that Apokedak is not eligible to apply for a limited entry permit because George Wilson's name appeared on the gear license. The superior court reversed, and held that it was necessary to interpret the term "holders of gear licenses" to include Apokedak in order to avoid the unjust discrimination that is prohibited by the enabling statute. I would affirm the decision of the superior court.

Our task is to reconcile two sections of the Limited Entry Act. AS 16.43.260 limits eligibility to apply for an entry permit to those "applicants who have harvested fishery resources commercially while partici-

pating in the fishery as holders of gear licenses ...." In AS 16.43.010, the legislature declares, "It is the purpose of this chapter to promote the conservation and the sustained yield management of Alaska's fishery resource and the economic health and stability of commercial fishing in Alaska by regulating and controlling entry into the commercial fisheries in the public interest and *without unjust discrimination.*" (Emphasis added.) It is a basic rule of statutory construction that courts must attempt to harmonize the specific provisions of an act with the legislature's expression of its intent.

> The presumption is that the lawmaker has a definite purpose in every enactment and has adapted and formulated the subsidiary provisions in harmony with that purpose; that these are needful to accomplish it; and that, if that is the intended effect, they will, at least, conduce to effectuate it. That evident purpose of a statute is an implied limitation on the sense of general terms, and a touchstone for the expansion of narrower terms. This intention or the prevailing perception of it affords the key to the sense and scope of minor provisions. From this assumption proceeds the general rule that the cardinal purpose, intent or purport of the whole act shall control, and that all the parts be interpreted as subsidiary and harmonious.

2A C. Sands, Sutherland Statutory Construction § 46.05, at 57 (4th ed. 1973) (footnote omitted). We must construe the term "holders of gear licenses" in a manner that avoids unjust discrimination.

*Commercial Fisheries Entry Commission v. Apokedak,* 606 P.2d 1255 (Alaska 1980) [hereinafter cited as *Apokedak I* ], is not dispositive of whether Apokedak is a gear license holder for purposes of the Limited Entry Act. The issue was raised in that appeal, but we specifically stated there that "We do not pass on the validity of the Commission's regulations and the question of whether Apokedak was in fact a gear license holder." *Id.* at 1258. The

6. *Wien Air Alaska v. Arant,* 592 P.2d 352, 356 (Alaska 1979).

matter was remanded for further consideration, and is before us now for the first time.

The majority maintains that our holding in *Apokedak I* forecloses the argument that denying Apokedak the right to apply for a limited entry permit unjustly discriminates against him. According to the majority, "We held [in *Apokedak I*] that the requirement that applicants for entry permits be past gear licensees bore 'a fair and substantial relationship to the purpose of preventing unjust discrimination in allocating entry permits ....' "

In a partnership, however, the partners hold all the assets of the venture as tenants in partnership.[1] It is undisputed that, in this case, the vessel, the gear and the gear license itself were purchased with partnership funds, and were intended by the parties to be partnership property. George Wilson acquired the gear license issued in his name in his capacity as agent for the partnership. Gear licenses were only issued to individuals; the partnership could not obtain a license except in the name of one of the individual partners. It is therefore unjust and discriminatory to hold that one member of the partnership is eligible to apply for a permit and hold that the other equal partner is not eligible.

The Commission uses a point system to rank applicants on the basis of past participation in the fishery and the hardship that would result from exclusion. Apokedak claims to have at least twenty-six points, a claim that the Commission apparently does not contest. Only seventeen points are required for a drift gill net permit in the Bristol Bay fishery. On the substantive basis of past participation and hardship, Apokedak is qualified to apply for an entry permit. As a full partner with a named gear license holder, he should be deemed a gear license holder for purposes of his application in order to avoid unjust discrimination.

Apokedak is an owner and operator of a vessel and gear, and is therefore a member of the class that the legislature and this court determined had the most to lose from the advent of a limited entry program and stood most in need of protection. *Apokedak I*, 606 P.2d at 1268. Inasmuch as only one name could appear on the gear license, the fact that George Wilson was the named holder should not obliterate Apokedak's investment, and his equal standing and participation in the partnership. Failure to accept entry permit applications from both partners will leave one without any right to benefit from his history as a partner in a commercial fishing venture. Furthermore, if Apokedak is denied an opportunity to apply, he will lose the status of full and equal partner that he once enjoyed. As I noted in my concurring opinion in *Apokedak I*, the legislative provision allowing entry permits to be transferred has resulted in a market for permits, and the value of the permits continues to escalate. *Apokedak I*, 606 P.2d at 1268–69 (concurring opinion). It is unlikely that Apokedak will be able to contribute gear, a vessel or other assets to the partnership that equal the value of an entry permit if he wishes to continue as a full partner with his brother-in-law, George Wilson.

---

1. AS 32.05.200 states in pertinent part:

 *Nature of right in specific partnership property.* (a) A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership.
 (b) The incidents of this tenancy are such that
 (1) a partner, subject to the provisions of this chapter and to any agreement between the partners has an equal right with his partners to possess specific partnership property for partnership purposes, but he has no right to possess the property for any other purpose without the consent of his partners;

 (2) a partner's right in specific partnership property is not assignable except in connection with the assignment of the rights of all the partners in the same property;
 ....
 (4) on the death of a partner his right in specific partnership property vests in the surviving partner or partners, except where the deceased was the last surviving partner, when his right in the property vests in his legal representative; the surviving partner or partners, or the legal representative of the last surviving partner, has no right to possess the partnership property except for a partnership purpose; ...

In *State v. Templeton*, 598 P.2d 77 (Alaska 1979), Templeton was initially denied an entry permit because he was not awarded economic dependence points for those years during which he fished with his partner and did not hold a gear license.[2] The Commission disregarded the hearing officer's recommendation that Templeton be awarded special circumstances points, maintaining that an applicant must be a gear license holder to qualify for special circumstances points under 20 AAC 05.630(b)(2). The superior court reversed and we affirmed the court's decision, stating that "we are persuaded by the reasoning of the hearing officer that Templeton's participation in 1971 and 1972 was that of an owner and operator of gear, rather than that of a crew member ...." *Templeton*, 598 P.2d at 81.

The regulation that was at issue in *Templeton* is part of Article Six of the regulations on limited entry. Article Six outlines a "Priority Classification Point System," and includes specific regulations on weighing an applicant's past participation in, and economic dependence on, the fishery. 20 AAC 05.620(1) expressly states that "Points for income dependence will be awarded only to applicants who harvested the fishery resource commercially while participating as a gear license holder during a year in which income dependence is claimed." Thus the Commission's position that applicants for special circumstances points for economic dependence must have been gear license holders during the year in question was far from unreasonable, given the literal wording of the regulations.

We held, however, that a literal application would undermine the legislative purpose of avoiding unjust discrimination:

> While a gear license may be a good general indicator of ownership and operation of gear for the purpose of weighing relative hardship, to foreclose automatically consideration of special circumstances under 20 AAC 05.630(b)(2) in the absence of a gear license would result, in many cases, such as the one at bar, in unjust discrimination. The Commission was properly concerned with the problem of proliferation of gear operating in the fisheries. Unfortunately, allocating one permit between two partners solely on the fortuitous circumstances of which one held the gear license in two given years does not realistically weigh the relative hardship which each partner would suffer by denial of a permit. In this case, the construction of the statutes and the regulations that the Commission suggests works at cross-purposes with the Legislature's stated intent to avoid "unjust discrimination." AS 16.43.010(a).

*Templeton*, 598 P.2d at 81 (footnotes omitted). Hence, the requirement that an applicant for an entry permit have been a gear license holder during the year in which income dependence is claimed may not be applied to deprive a license holder's full partner of the opportunity to show special circumstances, and thereby qualify for an entry permit.

The same interpretation of legislative intent supports the conclusion that Apokedak's application should not be summarily rejected, and that he should be allowed an opportunity to demonstrate eligibility for an entry permit under the *substantive* criteria set forth in the regulations. The majority admits that "AS 16.43.250 does not list being a holder of a gear license as a relevant hardship standard." The invest-

---

2. The regulation at issue is as follows:

 (b) Economic Dependence. Up to a maximum of 20 points will be awarded an applicant for economic dependence on a fishery based on the following schedule:

 (1) income dependence percentage based on harvesting the fishery resource while participating as a gear license holder in the fishery applied for as shown for each fishery in (c)(2) of this section. (Maximum of 10 points possible.)

 ....

 (2) if special circumstances exist such that an applicant's income dependence is not realistically reflected by his income dependence percentage for the years 1971 and 1972, the commission may award an applicant up to a maximum of 10 points based on a special showing of income dependence; ...

20 AAC 05.630(b)(1) and (2).

ment in a vessel and gear is a factor that the legislature directed the Commission to evaluate in determining an applicant's economic dependence on fishing. *See* AS 16.-43.250(a)(1). In compliance, the Commission promulgated 20 AAC 05.620(2), which provides, in part:

> [T]he commission will rank an applicant based on the factor of investment in vessels, gear and set net sites if the applicant, on the qualification date, was the owner .... In cases where a vessel, gear or set net site was owned jointly or in a corporate capacity, an applicant's points will be determined by multiplying his percentage of ownership interest times the total number of points possible.

Obviously, the Commission contemplated a pro rata division of the ownership interest for the purpose of allocating points between partners. As either a beneficial owner[3] or a constructive possessor of a gear license, Apokedak is entitled to points that reflect his share of the investment in the partnership. To permit Wilson alone to benefit from the joint partnership history would allow fortuitous circumstances to dictate the result. By allocating investment and other points between partners, the Commission may fairly limit proliferation of gear in the fisheries. At the same time, this would avoid unjust discrimination against those applicants whose partner happened to be the named licensee, but who could independently demonstrate past participation and economic dependence. It may be more convenient for the Commission to ignore applications by partners who were not named holders of gear licenses, and thus reduce the number of hearings required to distribute available entry permits. However, as we stated in *Apokedak I,* "Although the purpose of promoting administrative convenience is legitimate, it cannot outweigh the important right to engage in economic endeavor, which in some cases may involve the right to employment

in the industry." 606 P.2d at 1266 (footnotes omitted).

The majority attempts to distinguish *Templeton* on the ground that in that case we were interpreting an administrative regulation and in the present case we are reviewing a statute. Although this observation is accurate, it is of no substantive significance. In *Templeton,* we based the standard of review to be applied to the Commission's decision on the fact that the Commission had attempted to interpret the legislative intent of the Limited Entry Act. We stated that the trial court "was in just as good a position to make that judgment as the Commission. Similarly, since a question of statutory interpretation is involved, this court will independently evaluate the trial court's interpretation." 598 P.2d at 81 (footnote omitted). The same issue of legislative intent is before us in this case.

I would affirm the decision of the superior court that in order to avoid unjust discrimination, Apokedak must be deemed a gear license holder and be allowed to apply for a limited entry permit.

---

**3.** In *Templeton,* we noted:

> In [this] case and in other decisions the Commission has interpreted the Limited Entry Act as authorizing issuance of a permit only to an individual, natural person, and not to partners, a partnership, or a corporation; the Commission believes that the law of part-

nership independently makes persons who were formerly partners equal beneficial owners of licenses. Templeton has not challenged this interpretation before us or below. We therefore do not review that question.

598 P.2d 77, 81 n. 8 (citations omitted).