**Heinie ROEHL, Appellant,**

v.

**ALASKA COMMERCIAL FISHERIES ENTRY COMMISSION, State of Alaska, Robert Simon, John Williams, and Burke Riley, Commissioners, Appellees.**

No. 7086.

Supreme Court of Alaska.

July 6, 1984.

James F. Vollintine and William B. Carey, Anchorage, for appellant.

Shelly J. Higgins, Asst. Atty. Gen., Anchorage, Sarah Forbes, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for appellees.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

### I. STATEMENT OF FACTS

Heinie Roehl is a 53-year-old man who has fished commercially since 1945, predominantly in Cook Inlet. Roehl worked as a deckhand on a drift boat in Cook Inlet from 1950 until 1953. Between 1954 and 1966, Roehl alternatively operated his own boat as a gear license holder in Cook Inlet, or fished on his brother's boat in Bristol Bay.

In 1967 Roehl married a woman from Bristol Bay and purchased a Bristol Bay set net license in order to fish her set net site on the Naknek River. Roehl intended to work the Bristol Bay set net site again in 1968, obtaining another license for that season. Prior to the 1968 fishing season, however, Roehl fell down a flight of stairs and seriously injured his back.

As a result of his back injury, Roehl was unable to fish from 1968 until 1975. Instead, Roehl worked at a laundry from 1970 until 1972, and he received on-the-job training as an automobile mechanic from 1972 until 1975. He resigned from the latter position in 1975 when he underwent major surgery for cancer.

Roehl's back condition improved to the point where in April, 1975 he applied to the Commercial Fisheries Entry Commission for limited entry permits for the Cook Inlet drift fishery and the Bristol Bay set net fishery. He also applied for and received an interim-use permit for the 1975 season; his surgery prevented him from participating that year, however, and only allowed him to do a limited amount of fishing the following year. Since that time, Roehl has fished as a gear license holder in the Cook

Inlet drift fishery under interim-use permits.

## II. PROCEEDINGS BELOW

The Bristol Bay set net permit for which Roehl applied in April, 1975 was granted in January, 1978 on the basis of his active participation in 1967, unavoidable circumstances precluding his active participation in 1968, and set net site ownership. Roehl's application for a limited entry permit for the Cook Inlet drift fishery, however, was denied by the Commission. This case arises from the denial of that application.

A hearing on Roehl's Cook Inlet drift permit was held before a hearing officer. Roehl needed seventeen (17) points under the system adopted by the Commission and codified at 20 AAC 05.600–660. Roehl claimed a total of 30 points; all of the points that were not predicated on active participation between 1960 and 1965 and on the availability of alternative occupations were based upon unavoidable and special circumstances, grounds for the discretionary award of points under 20 AAC 05.630(a)(5) and (b)(2).[1]

The hearing officer recommended an award of four (4) points on the basis of Roehl's active participation in the Cook Inlet fishery as a gear license holder between 1960 and 1965. However, he recommended denial of Roehl's claim for past participation points based on unavoidable circumstances under 20 AAC 05.630(a)(5) and of Roehl's claim for income dependence points based on special circumstances under 20 AAC 05.630(b)(2).

Roehl objected to the findings and recommendations of the hearing officer and requested and obtained a hearing before the Commission pursuant to 20 AAC 05.845. Following the hearing the Commission notified Roehl that it had adopted the hearing officer's recommendations and that the application for a Cook Inlet drift permit would be denied.[2]

Roehl appealed the Commission's decision to the superior court, which affirmed. This appeal followed.

## III. DISCUSSION

The Commission ruled that in order to receive unavoidable circumstances points under 20 AAC 05.630(a)(5) Roehl must demonstrate three things:

1) that unavoidable circumstances prevented him from participating in the fishery [that] year ..., and

2) that he held a specific intent to participate in the fishery ..., and

3) that all reasonably possible efforts were made to participate in the fishery.

The Commission also found that in order to receive special circumstances points under 20 AAC 05.630(b)(2) Roehl must meet three similar requirements, including "a specific intent to participate in the fishery...."

The issue here centers on the Commission's requirement of specific intent. With respect to the 1968 season the Commission found that Roehl lacked the intent to operate in Cook Inlet because of pre-injury evidence that he intended to set net in Bristol Bay. Consequently, the Commission awarded Roehl no points for active participation in the Cook Inlet fishery for 1968, because

---

**1.** 20 AAC 05.630(a)(5) provides:

[I]f unavoidable circumstances exist such that an applicant's past participation in the fishery is not realistically reflected by points awarded for past participation for the years 1960 through 1972, the commission may award an applicant up to a maximum of 16 points upon a special showing of past participation.... 20 AAC 05.630(b)(2) provides:

[I]f special circumstances exist such that an applicant's income dependence is not realistically reflected by his income dependence per-

centage for the years 1971 and 1972, the commission may award an applicant up to a maximum of 10 points based on a special showing of income dependence; ...

**2.** The Commission noted that the hearing officer had erred in stating that Roehl had presented no evidence of his participation in the Cook Inlet fishery in 1963 and 1964. It did not decide whether he should have been awarded points for that participation, however, because it denied his other claims.

"[The applicant] was properly licensed for set netting in Bristol Bay.... [I]t is not possible to purchase a gear license for more than one administrative area.... [He] intended to set net in Bristol Bay in 1968."

With respect to the years 1969 through 1972, the Commission found that Roehl lacked the intent to operate in Cook Inlet because his injury and illness physically precluded his participation.

[The applicant's] inability to continue participation for an indefinite period of time precluded the applicant from holding a specific intent to participate in any of the years from 1969 to 1972.... He has not purchased any type of commercial licensing since the accident or demonstrated any tangible interest in the fishery. He has never been the owner of a vessel or any drift gill net gear for the Cook Inlet area. The applicant has not demonstrated a specific intent to participate and should not receive any points for participation in 1969, 1970, 1971 or 1972.

As the Commission has interpreted its specific intent requirement, a physical disability which continues for several years can only be considered as an unavoidable or special circumstance for the first year of the disability. Thereafter, to use the words of the Commission in its decision, the "inability to continue participation for an indefinite period of time preclude[s] the applicant from holding a specific intent to participate...."

Roehl argues that this interpretation is inconsistent with the regulations. He points out that in the case of the unavoidable circumstances regulation, 20 AAC 05.630(a)(5), up to a maximum of 16 points may be awarded and that under the special circumstances regulation, 20 AAC 05.630(b)(2), up to 10 points may be allowed.

The power to award so many points, he argues, implies that an unavoidable or special circumstance may have consequences which extend for longer than one year.[3]

We find Roehl's argument to be persuasive. There is nothing in the language of either regulation which suggests a one year limitation on unavoidable or special circumstances. The imposition of such a limitation seems to conflict with the authority expressed in each regulation to award an applicant more points than he could have received had he fished full time for one season in the fishery in question. The Commission's explanation that the regulations were 'meant to account for multiple circumstances occurring in separate years seems only remotely tenable. Under the Commission's interpretation in order to obtain 16 points under 20 AAC 05.630(a)(5) one would have to be victimized by at least four separate unavoidable circumstances, each occurring in separate years. Further, the Commission's interpretation seems unrealistic and unfair because disabilities often do last for more than one year. We see no reason why one fisherman who is disabled for two years by separate, successive injuries, should be entitled to more points toward a limited entry license than a fisherman of the same background and experience who is disabled for two years by one injury.[4]

We therefore conclude that the Commission committed an error of law in its interpretation of the regulations in this case. This error has a potential impact on Roehl's application for the years 1969 through 1972, but not 1968. The Commission's conclusion that Roehl did not intend to operate in Cook Inlet for the 1968 season is a factual one which is supported by substantial evidence. As to the years 1969 through 1972, however, consideration of

---

**3.** Under 20 AAC 05.630(a)(1) an active fisherman may receive a maximum of 5 points each year for the years 1971 and 1972 and a maximum of 3 points for the years 1969 and 1970.

**4.** Avoidance of unjust discrimination in the distribution of limited entry permits is a statutory purpose, AS 16.43.010(a), and as such it is a guide to the interpretation of the Commission's regulations. *State, Commercial Fisheries Entry Commission v. Templeton*, 598 P.2d 77, 81 (Alaska 1979).

Roehl's application under a correct interpretation of the regulations is necessary.

REVERSED and REMANDED.

COMPTON, Justice, concurring.

I agree with the result arrived at by the court, but reach it by a different route.

My disagreement with the court's reasoning lies in its discussion of a "one year limitation" on a physical disability qualifying for unavoidable or special circumstance points and the relationship of this limitation to the Commission's specific intent to participate requirement. Had the Commission imposed a *per se* "one year limitation," I would agree with the court that it would have been impermissible to do so. However, the Commission imposed no such limitation. Indeed, the Commission makes no such argument. Furthermore, in the context of a physical disability resulting from an injury, I view the Commission's specific intent to participate requirement irrelevant as a threshold consideration.

Roehl was awarded one point in his Bristol Bay application for past participation for 1968 even though he did not fish that year. His back injury, which disabled him from fishing, was held to have been an unavoidable circumstance, 20 AAC 05.-630(a)(5), because

> [The applicant] was properly licensed to participate at the time of his injury and there is no question that the back injury prevented the applicant from actually fishing.

However, he was not awarded any unavoidable or special circumstance points for the years 1969–1972 in either his Bristol Bay or Cook Inlet applications because

> [The hearing officer was] unable to find merit in the applicant's claim of points for the years 1969, 1970, 1971 and 1972. Medical records indicate that the applicant has not been physically able to operate a unit of set gill net gear since his injury in 1968. *This inability to continue participation for an indefinite period of time precluded the applicant from holding a specific intent to participate in any of the years from 1969 to 1972,* (See Case Files 7596 and 7597). He has not purchased any type of commercial licensing since the accident or demonstrated any tangible interest in the fishery. His gear has been stored since the injury and was stolen in 1974. The applicant has not demonstrated a specific intent to participate and should not receive any points for participation in 1969, 1970, 1971 or 1972. [Emphasis supplied].

The precise basis for rejecting Roehl's claims is unclear. The hearing officer states that a physical disability resulting in an inability to participate for an indefinite period of time *precludes* holding a specific intent to participate in the fishery. If that is so, then holding a commercial license or demonstrating a tangible interest in the fishery becomes irrelevant.

In its brief, the Commission appears to specify the real basis for rejecting Roehl's claims:

> The regulation is designed to cover the possible situation of a combination of circumstances, or disasters, which preclude participation for several consecutive years. The regulation must be flexible enough to cover a situation where, for example, an applicant is too ill to fish in 1970, recovers his health and plans to fish in 1971 but loses his boat to a fire at the start of the season, repairs his boat for the 1972 season then is injured.

> Furthermore, an applicant who is prevented from fishing for two, three, or even four consecutive years by physical disability could be awarded points for 1969–1972 *if he could show that he remained dependent on the fishery during that time period despite his disability, maintained his gear and was ready to fish each year.* This was not Mr. Roehl's situation. As discussed above, Mr. Roehl turned from fishing to other occupations between his 1968 injury and his recovery in 1976. [Emphasis supplied].

Thus it appears that Roehl's physical disability did not preclude him from holding a specific intent to participate. Rather,

Roehl failed to take objectively identifiable steps to manifest this intent, regardless of the indefinite duration of the physical disability.

In my view it is farcical to require a person in Roehl's position to purchase a license, own and maintain gear, and take other steps to ready for fishing, when at the time the person has to make these gestures he or she cannot fish because of a then existing physical disability. Yet if Roehl had performed these futile and costly acts, he would have demonstrated a specific intent to participate and presumably would have been awarded points for 1969–1972.[1]

The Commission has adopted a policy, reflected in the demonstration Roehl must make, which represents its interpretation of 20 AAC 05.630(a)(5) and (b)(2). In my view, there is no reasonable basis for such an interpretation in the context of a claim for unavoidable or special circumstance points based on a physical disability.

The focus of the inquiry in this type of case should be on the nature and extent of the injury and resulting disability, and whether the disability is likely to permanently exclude [2] the applicant from the fishery, or merely postpone the applicant's participation in the fishery. This kind of an inquiry will be more difficult than merely looking for objectively identifiable manifestations of specific intent to participate in each individual year. However, it is an inquiry routinely made by the Alaska Workers Compensation Board, and by countless judges and juries considering claims of disability.

It is only *after* a physical disability determination is made that an applicant's intent becomes relevant. If the physical disability merely postpones participation in the fishery, the intent required should be the intent to participate as soon as the applicant is physically capable. If the Commission is of the view that the applicant's lack of participation in and economic dependence on the fishery in the critical years is the result of a conscious abandonment of the fishery, resulting from a physical disability, then the burden of showing such abandonment ought to be on the Commission.[3]

There being no reasonable basis for the Commission's interpretation of 20 AAC 05.630(a)(5) and (b)(2), the case should be remanded for further consideration.

1. Roehl testified that in each of the critical years he had an offer to fish from a specific cannery, but that he declined the offers because of his injury. He had offers to fish with friends and relatives, but again could not accept because of his injury. The Commission does not dispute this evidence. A fair reading of the record can lead to no other conclusion than that Roehl wanted to and would have fished, but for his injury.

2. In Files 75–96 and 75–97 (erroneously referred to by the hearing officer herein as 7596 and 7597), applicants were awarded unavoidable circumstance points for two years after medical conditions permanently excluded them from the fishery, reflecting a period of transition from one life style to another. The points were awarded to ameliorate undue hardship. If it is likely that a physical disability will permanently exclude an applicant from participating, awarding unavoidable or special circumstance points would be in error.

3. The Commission's requirement that an applicant show a specific intent to participate in the fishery is in reality a requirement that the applicant show he or she has not abandoned the fishery. Thus the applicant must prove the negative.