Clemens GRUNERT, Jr., Appellant,

v.

STATE of Alaska, COMMERCIAL
FISHERIES ENTRY
COMMISSION, Appellee.

No. S–1091.

Supreme Court of Alaska.

April 3, 1987.
Rehearing Denied April 23, 1987.

Sharon L. Gleason and Wilson A. Rice, Reese, Rice and Volland, P.C., Anchorage, for appellant.

Margot O. Knuth, Asst. Atty. Gen. and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

### OPINION

MOORE, Justice.

Clemens Grunert, Jr. applied for a limited entry permit pursuant to the Limited Entry Act, AS 16.43.010–.990. Under AS 16.43.260(a), only a person who has fished commercially as a gear license holder is eligible to apply for a limited entry permit. Grunert claimed that he had fished as a gear license holder in 1972. The Commercial Fisheries Entry Commission (CFEC) rejected Grunert's application, finding that it was untimely and that he did not hold a gear license in 1972. The superior court affirmed this decision and Grunert appeals. We affirm the decision below because we find that Grunert did not hold a gear license and the state is not estopped to deny that he did.

### FACTS AND PROCEEDINGS

Clemens Grunert, Jr. has lived all his life in Chignik, Alaska. Since boyhood, Grunert has assisted his father in the commercial salmon purse seine fishery. Grunert crewed for his father as skiffman from 1965 until 1973 and then crewed for his uncle for the next five years. Following that, he fished from his father's older boat, then from a leased boat, and finally from his own boat, pursuant to interim-use permits issued pending a final decision on his limited entry permit application. He was unable to obtain an interim-use permit for 1985.

In July 1972, while Grunert was crewing on his father's boat, his father became ill, requiring medical treatment in Anchorage. Only a gear license holder could legally operate the gear, and it was too late in the season to get a new license for someone else. Anxious that the boat not remain idle during his absence, the father radioed an official of the Alaska Department of Fish and Game for advice.

The father claims that Fish and Game official Paul Pedersen advised him over the radio "that it would be alright for Clemens Grunert, Jr. to operate [the] vessel, ... and that it would not be necessary for the time being to work a gear license transfer." Grunert testified his father told Pedersen "that he was going to have to be· leaving for awhile and that I would be running .the boat and Paul said it would be okay." Grunert claims that Pedersen never indicated that any paperwork would be required. The record contains no written documentation of this conversation or of any gear license transfer.

The father was absent for a week. Grunert fished as captain of the boat for two days during this period. Upon his return from Anchorage, the father resumed control of the boat and gear while Grunert went back to crewing. No one attempted to notify Fish and Game that the father was resuming the role of gear license holder.

On several other occasions during the 1972 season, Grunert took command of the boat and gear when his father went home early for health reasons.

Grunert applied for a limited entry permit in 1977 and requested an administrative hearing. The hearing officer issued a recommended decision finding that 1) Gru-

nert was ineligible to apply for a limited entry permit because he had never held a gear license, and 2) the application was untimely without excuse. Grunert requested an oral presentation before the CFEC. After hearing testimony and argument, the CFEC voted to adopt the hearing officer's recommended decision with additional comment on the timeliness issue. The CFEC refused to reconsider its decision and Grunert appealed to the superior court. The superior court stayed the appeal pending our decision in *Commercial Fisheries Entry Comm'n v. Apokedak*, 680 P.2d 486, 490 (Alaska 1984) (*Apokedak II*). After we held in *Apokedak II* that "gear license holder" means named licensee, the superior court lifted the stay and affirmed the CFEC decision against Grunert. Grunert now appeals to this court.

The only question presented on appeal is whether Grunert has satisfied the threshold eligibility requirement of AS 16.43.-260(a) by harvesting fishery resources commercially while participating in the fishery as the holder of a gear license.[1]

Grunert argues that (1) the case must be remanded because the CFEC did not consider the eligibility question; (2) he was the transferee of his father's gear license pursuant to the emergency transfer provision of former AS 16.05.670(a); and (3) the state is estopped to deny that he was a gear license holder.

## DISCUSSION

### A. The CFEC determined the eligibility issue

■ Grunert's first argument before this court is that the CFEC based its decision only on the timeliness issue and did not consider the eligibility question. Since the timeliness issue is now moot, Grunert asks

that his case be remanded to the CFEC so it can consider and decide the eligibility issue.

The hearing officer carefully analyzed Grunert's gear license argument and concluded that Grunert is not eligible to apply for a limited entry permit. He also concluded that any advice Grunert received as to his ineligibility was entirely correct, and since there was no misadvice, there was no excuse for the late application. The CFEC voted to "adopt" this recommended decision. Grunert contends that since the CFEC offered additional comment only on the timeliness issue, it chose to rely on only one of the two grounds underlying the hearing officer's decision.

In our view, by adopting the hearing officer's recommended decision, the CFEC accepted as its own everything in that decision. *See* AS 44.62.500(b). The CFEC did not indicate that it was adopting only *part* of a recommended decision. The fact that the CFEC offered additional comments to clarify the analysis of the timeliness issue suggests that it was content with the hearing officer's treatment of the eligibility question. We will therefore proceed to a review of the eligibility issue, treating the hearing officer's recommended decision as if it were issued by the CFEC.

### B. Grunert was not a gear license holder

Grunert argues that the CFEC incorrectly interpreted former AS 16.05.670(c)[2] in concluding that he was not the holder of a gear license in 1972. He suggests that the failure to send the required written statement within 10 days of the radio conversation does not invalidate the attempted license transfer. As explained in his brief, "Mr. Grunert asserts that the proper inter-

---

1. Although Grunert's application presented both the timeliness issue and the eligibility issue to the CFEC, only the eligibility issue is currently before us on appeal. The parties agree that the class action settlement in *Wassillie v. Simon*, (Case No. 3AN-75-506 Civ.) makes the timeliness issue moot. If he meets the threshold eligibility criteria, Grunert's application is timely.

2. AS 16.05.670(c) (repealed ch. 105, § 19, SLA 1977) (hereafter former AS 16.05.670) provided:
   If notification of the license transfer is made by radio or telegraphic communication, the written statement of the licensee, his agent, or his legal representative *shall* be sent to the same department office as a radio or telegraphic communication within 10 days of the notification of the transfer.
   (Emphasis added.)

pretation of the statute is that radio notice is sufficient to allow a transferee to legally fish for a 10–day period. If written notification is not provided within those 10 days, the transfer lapses." Accordingly, Mr. Grunert asserts that during the 10–day period he was the lawful gear operator because radio notification was provided.

The CFEC, however, adopted a different interpretation of the statute. The hearing officer's decision stated:

The failure of the applicant or his father to send such written statement within the 10–day period results in the failure to complete the legal transfer of the father's gear license. Since a legal transfer did not occur, the applicant did not harvest fishery resources while holding a gear license issued under AS 16.05.536 through AS 16.05.670. His participation as a gear operator during his father's absence was simply illegal. Based upon the application of AS 16.43.260(a), he is ineligible to apply.

Former AS 16.05.670(c) concerns notice procedure, a matter that is not related to the expertise of the CFEC. Our review of an agency's interpretation of a statute where no agency expertise is involved is the "substitution of judgment" test. *Commercial Fisheries Entry Comm'n v. Templeton*, 598 P.2d 77, 80 n. 4 (Alaska 1979); *see also Commercial Fisheries Entry Comm'n v. Byayuk*, 684 P.2d 114, 122 (Alaska 1984).

■ Former AS 16.05.670 originally made gear licenses non-transferrable. Ch. 94, § 9, art. III SLA 1959; amended by ch. 131, § 23, SLA 1960; and ch. 160, § 1, SLA 1962. In 1963, the statute was revised to make gear licenses transferrable if the incapacity of the license holder would keep the vessel in port.[3] Ch. 48, § 3, SLA 1963. To effect a transfer, a licensee had to submit a sworn written statement of the trans-

fer and the reasons for it to the Alaska Department of Fish and Game. Former AS 16.05.670(b)(4). The statute provided for notification of license transfer by telegraph or radio communication only if the sworn written statement required by subsection (b)(4) was sent to the same office as the radio or telegraph message within ten days. Former AS 16.05.670(c). Subsection (d) required the Department of Fish and Game to review all transfers to prevent fraud.

We conclude that the purpose of these elaborate requirements was to control tightly the transfer of gear licenses, which were previously entirely non-transferrable. Therefore, we believe that these requirements should be strictly construed. Accordingly, we agree with the CFEC that the statute does not provide for the temporary transfer of a license for ten days based only on a radio or telegraphic statement. The purpose of the statute is to permit rapid transfer of licenses where *bona fide* transfers are intended. A gear license can only be transferred by full compliance with all the requirements of the statute. The licensee must intend unequivocally to transfer the gear license to another. He must state that clear intent, in writing and under oath. Furthermore, he must give reasons for the transfer, and these reasons must comport with the statutorily acceptable reasons ("sickness, injury, death, unavailability or other incapacitation ... [that] keeps or may keep a commercial fishing vessel in port....") Former AS 16.05.670(a).[4]

■ Furthermore, Grunert has provided no statement that indicates the licensee's (his father's) unequivocal willingness to transfer his gear license to Grunert. The statement allegedly made by the father to Pedersen that Grunert would be running the boat in the licensee's absence does not indicate such intent. Grunert's father's

3. Apparently this law was inadvertently repealed by ch. 2, § 8, SLA 1964, which essentially re-enacted the pre–1963 law. This was not addressed by the parties. We accept the explanation of "harmless error" as stated in the Revisor's Note to AS 16.05.670 (1964 Replacement Part).

4. In 1965 this portion of the statute was amended to distinguish between the transfer of gear licenses issued under AS 16.05.570 or 16.05.580 and those issued under other statutes. Ch. 15, § 2, SLA 1965. The distinction is immaterial to this case.

lack of intent to transfer the license is affirmed by his resumption of control of the boat and gear upon his return without notice to the Department of Fish and Game and by the fact that Grunert's share of the profits was not increased to a skipper's share during the days he skippered the vessel.

Thus, no transfer of the senior Grunert's gear license was made in 1972 pursuant to AS 16.05.670. Therefore, Grunert does not meet the threshold requirement of AS 16.-43.260(a) that he hold a gear license.

■ Finally, this court has expressly held that "the term 'holders of gear licenses' can only be reasonably construed to refer to individual named licensees," *Apokedak II*, 680 P.2d at 488. "When the legislature limited the right to apply for an entry permit to 'holders of gear licenses issued under AS 16.05.536–16.05.670 . . . ,' it meant the individuals who had been issued gear licenses under those statutory sections; not such individuals and their partners as well." *Id*. This is because the legislature intended the number of limited entry permits initially issued to reflect actual use as indicated by the number of gear license holders at the inception of the limited entry system. *Id*. Allowing partners of gear license holders to be eligible for limited entry permits would result in the issuance of more permits than there were gear license holders, a result inconsistent with the legislative intent. *Id*. It would likewise be improper to treat as eligible every crewmember who for one reason or another has operated gear while the license holder was not on board.

### C. Estoppel

Grunert argues that the state, in 1972, asserted the position that he was a gear license holder and it should now be estopped from changing that position. The CFEC did not expressly decide this claim although it was before the agency, nor did it rule on certain facts which would be necessary to find an estoppel. A remand is unnecessary, however, because we find that the uncontroverted facts in the record preclude estoppel.

We have previously rejected the traditional rule that one cannot estop the government. In *Municipality of Anchorage v. Schneider*, 685 P.2d 94, 97 (Alaska 1984), we held that estoppel lay against a municipal government seeking to enforce a zoning regulation based on little more than the ordinary factors of estoppel: assertion of a position by word or conduct; reasonable reliance on that position; resulting prejudice; and, additionally, enforcement of the estoppel to the extent required in the interest of justice.

■ In order to succeed on an estoppel theory in this case, Grunert must establish that the position asserted by the state, on which he relied to his prejudice, was that he held a gear license. No other position will satisfy the eligibility requirement of AS 16.43.260(a). Grunert claims that Fish and Game representative Pedersen did assert such a position based on Grunert's father's statement that he understood that it was "proper under the regulations to radio such requests" for short-term emergency license transfers and Grunert's own statement that "[w]e were advised that it would not be necessary to work a permanent transfer of the gear license, at that time, and that I could run the vessel as the gear operator." These statements fall short of an assertion that Grunert was a gear license holder. Grunert's own affidavit states that Pedersen "told me I could turn in fish *without a gear license* over the radio." (Emphasis added.) Grunert also stated "[Pedersen] told me that it was alright to fish the boat by myself without my own gear license. His reason was that it would be too much trouble to do the paperwork."

■ Even if Pedersen had asserted that radio notification alone, without written follow-up, were sufficient to transfer a gear license, this would not constitute an assertion of the position that Grunert was a gear license holder. The dissent apparently contends that meeting the purely mechanical requirements of the transfer statute (either by actual compliance or by their waiver by estoppel) will effect the license

transfer. We believe, however, that the content of the notice provided (regardless of how it is provided) is also crucial: there must be a statement by the license holder that he intends to transfer the license to another person. Former AS 16.05.-670(b)(4). That Grunert's father did not intend to transfer the gear license, and thereby relinquish control over the fishing gear, is documented by the following: first, he did not make such an unequivocal statement orally over the radio; second, he did not follow up with a sworn written statement; third, he did not change Grunert's pay from a crewman's share to a skipper's share even for the two fishing days when Grunert served as skipper; and fourth, he resumed control over the vessel and gear upon his return without any notice to Fish and Game. Clearly, he understood that he, not Grunert, was the gear license holder.[5]

█ Because we find that the state did not adopt and communicate to Grunert the position that he held a gear license during his father's absence, we need not consider whether Grunert could have reasonably relied on such an incorrect statement of law, or whether the prejudice Grunert now claims (ineligibility for a limited entry permit) actually results from the position he claims the state asserted. We conclude that Grunert cannot estop the state from denying that he held a gear license because the state never asserted that he did. This finding necessarily precludes Grunert's claim of quasi-estoppel ("which precludes a party from taking a position inconsistent with one he has previously taken where circumstances render assertion of the second position unconscionable." *Jamison v. Consolidated Utilities, Inc.*, 576 P.2d 97, 102 (Alaska 1978)). Even if this doctrine may be applied against the state,[6] the state did not assert a position inconsistent with its present position.

AFFIRMED.

5. The dissent correctly observes that had written notification of transfer gone through, Grunert would now be eligible to apply for a permit. The father, however, could not have simply reassumed control over the gear in such a case.

MATTHEWS, Justice, dissenting, joined by RABINOWITZ, Chief Justice.

It is useful to ask what would have happened if there had been a follow-up written notification of the emergency transfer following the radio communication. The answer is that it would be incontestable that Grunert had thereby fished as the holder of a gear license issued under AS 16.05.670, and thus would be entitled to apply for a limited entry permit. The legislature, in defining those eligible to apply for entry permits included "applicants who have harvested fishery resources commercially while participating in the fishery as holders of gear licenses issued under," among other sections, 16.05.670. Under section .670, an emergency transferee becomes a gear license holder by complying with the notification provisions of that section. No active issuance or other affirmative act by the Department is necessary.

Under former AS 16.05.670(e), only a gear licensee or a license transferee could operate licensed fishing gear. This was true even if the period of operation was only one or two days. Under subsection (c) of section .670, radio notification of a license transfer was permitted, but in all cases such notification had to be followed up by written notification within ten days of the radio notification. In the present case, Grunert alleges that he was told by Department employees that radio notification would be sufficient and that written follow-up was not required. If this can be proven there is, in my view, a case for application of the doctrine of estoppel.

The general elements of estoppel are assertion of a position, reasonable reliance, and resulting prejudice. *Municipality of Anchorage v. Schneider*, 685 P.2d 94, 97 (Alaska 1984). In this case there is a question of fact as to the first element, assertion of a position. The question is whether or not the state expressed the view that no follow-up paperwork was necessary. If this was stated it was wrong, for written Grunert would have had to expressly re-transfer the license back to him.

6. A point we decline to decide.

follow-up is mandatory. Assuming such a position was expressed, it would be difficult to say that Grunert was not reasonable in relying on it. The resulting prejudice caused by Grunert's reasonable reliance is that he is now ineligible to apply for a limited entry permit. This prejudice is different from that which would most likely flow from reliance. Ordinarily, if the state reversed its position, the prejudice would be an ensuing criminal prosecution. However, there is no requirement in the doctrine of equitable estoppel that the type of prejudice which results from reasonable reliance be foreseeable. I cannot think of any reason why such a requirement should be imposed.

In *Municipality of Anchorage v. Schneider*, we noted that the doctrine of estoppel should not be applied against a public agency where the general requirements for application of the doctrine are fulfilled if doing so would result in significant prejudice to the public interest. *Id.* The question of prejudice to the public interest can be answered by asking what the consequences of allowing Grunert to apply would be. The answer is that, at worst, one more permit would be issued for the Chignik purse seine fishery. I do not think that this can be regarded as prejudice to the public interest, or in this context, to the other permit holders in that fishery, of sufficient significance to deprive Grunert of the remedy that the doctrine of estoppel would otherwise give him.

For the above reasons, I would reverse the judgment of the superior court and remand this case with instructions for a further remand to the Commission to conduct an evidentiary hearing on the factual question concerning what Grunert was told by state agents with respect to the need for follow-up written notification.