**COMMERCIAL FISHERIES ENTRY COMMISSION, State of Alaska, Petitioner,**

v.

**Jacob BYAYUK, Respondent.**

**No. 6428.**

Supreme Court of Alaska.

May 25, 1984.

John B. Gaguine, Asst. Atty. Gen., Wilson L. Condon, Atty. Gen., Juneau, for petitioner.

David B. Snyder, Carolyn Lathrop, Alaska Legal Services Corp., Dillingham, for respondent.

## OPINION

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

COMPTON, Justice.

The Commercial Fisheries Entry Commission (hereafter CFEC or Commission) petitions for review from a superior court decision ordering it to allow Jacob Byayuk to submit evidence that he qualifies for income dependence points pursuant to *State, Commercial Fisheries Entry Commission v. Templeton*, 598 P.2d 77 (Alaska 1979), and to determine the validity of this evidence.[1] The primary issue is whether *Templeton* should be applied retroactively and, if so, to what extent.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jacob Byayuk filed a timely application for a Bristol Bay salmon drift gill net limit-ed entry permit with the CFEC in September 1977.[2] He claimed twelve points on his application. On February 6, 1978, the Commission mailed a classification notice granting Byayuk six points and advising him of his right to request a hearing until March 23, 1978. Also mailed on the same day was a notice of permit denial stating that "[e]ven if all of the points you claimed were verified, you would still have inadequate points to be issued an entry permit."

The Commission then wrote to Byayuk on July 7, 1978 advising him of his right to submit additional evidence on his point claims pursuant to 20 AAC 05.520(d).[3] The deadline for the submission of additional evidence was September 1, 1978. If the deadline was too burdensome for a particular individual an extension could be granted provided the person notified the CFEC prior or to September 1 and explained the situation in writing.

The Commission addressed these letters to Byayuk in care of General Delivery in Togiak. Byayuk states that he never received anything from the Commission other than a general notice of receipt of his initial application. Since he was not in Togiak during this time he alleges that the letters were either lost in the mail or never forwarded to him. In any case, he did not respond to the notices within any of the time limits set forth by the Commission.

On February 14, 1979, Alaska Legal Services Corporation (hereafter ALSC) sent a letter to the CFEC on behalf of Byayuk asking for a copy of his file. A point application was attached to this letter claiming eighteen points. This point application differed from the original by requesting six additional points; three for

1. Our decision in this case was deferred pending our determination of the constitutional issues raised in *State v. Ostrosky*, 667 P.2d 1184 (Alaska 1983).

2. The 1977 application period was established under the authority of *Isakson v. Rickey*, 550 P.2d 359 (Alaska 1976) and pursuant to 20 AAC 05.510(f).

3. 20 AAC 05.520(d) provides in part:

Evidence offered by the applicant for an entry permit will be accepted by the commission within the following time limits:

. . . .

(3) Evidence in support of those applications which were to be submitted to the commission within the time limitations of 20 AAC 05.510(f) will be considered by the commission if received on or before September 1, 1978, unless the applicant is notified otherwise.

vessel ownership and three for gear ownership. Also attached was an affidavit from Byayuk's father stating, in part, that his son was his only partner from 1965 through 1972. The Commission responded on February 23, 1979 by stating "that this application must remain denied." Two alternate reasons were given; the information was submitted six months too late and, even were it timely, no new points would result.

ALSC wrote on March 1, 1979 to request an extension of time to submit additional point claims evidence. On July 3, 1979, CFEC denied the extension request. Byayuk filed a request for a hearing on August 15, 1979. This request was finally denied in a letter of March 18, 1980 "as not demonstrating a genuine issue in contention." This letter concluded by stating that it constituted the final action by the Commission and that Byayuk had thirty days in which to appeal. Byayuk did file a timely appeal.

This court issued its decision in *State, Commercial Fisheries Entry Commission v. Templeton*, 598 P.2d 77 (Alaska 1979), on August 3, 1979. While Byayuk's request for a hearing did not specifically refer to *Templeton*, the decision did have obvious relevance to Byayuk's situation. In *Templeton* we held that a person who fishes as an equal partner is entitled to special circumstances points for economic dependence under 20 AAC 05.630(b)(2)[4] even if the gear license is not in that person's name. The Commission had interpreted that regulation and the Limited Entry Act to require a gear license as a prerequisite to special circumstances points.[5] This court affirmed the superior court decision ordering the Commission to award the contested points and a permit. In doing so we noted that "the construction of the statutes and regulations that the Commission suggests works at cross-purposes with the Legislature's stated intent to avoid 'unjust discrimination.' AS 16.43.-010(a)." *Id.* at 81.

After the CFEC denied Byayuk a hearing but prior to the superior court hearing, Byayuk requested that the CFEC stipulate to a remand for a determination on the special circumstances points pursuant to *Templeton*. The Commission did not so stipulate and the case subsequently went to hearing. The superior court ordered the case remanded to the CFEC to afford Byayuk the opportunity to submit evidence on his failure to meet the additional evidence deadline and to present evidence on his claim for income dependence points under *Templeton*. CFEC petitioned for review to this court which we granted on January 28, 1982.

Three issues are raised by the parties: (1) was there a "final" determination by the Commission prior to Byayuk's request for an extension of time;[6] (2) did the Commission abuse its discretion or violate due process of law in refusing to grant the extension; and (3) should *Templeton* be applied retroactively and, if so, to what extent. In view of our decision on the retroactive application of *Templeton* we need not address the other issues.

---

4. 20 AAC 05.630(b)(2) reads as follows:
    (2) if special circumstances exist such that an applicant's income dependence is not realistically reflected by his income dependence percentage for the years 1971 and 1972, the commission may award an applicant up to a maximum of 10 points based on a special showing of income dependence.

5. As we recently noted in *Commercial Fisheries Entry Commission v. Apokedak*, 680 P.2d 486, 489 (Alaska 1984), the Commission's interpretation "was in accordance with 20 AAC 05.620(1), which states that '[p]oints for income dependence will be awarded only to applicants who harvested the fishery resource commercially while participating as a gear license holder during a year in which income dependence is claimed.'" In determining that the CFEC's interpretation was erroneous we implicitly overruled 20 AAC 05.620(1).

6. The Commission claims there was a final determination on March 23, 1978, the last date to request a hearing on Byayuk's initial point classification. Since Byayuk did not timely submit additional evidence and since there was no adequate explanation for the delay in accordance with the CFEC's required criteria, Byayuk's file was never reopened according to the Commission.

## II. RETROACTIVE APPLICATION OF TEMPLETON

■ In order for Byayuk to get the benefit of partnership points it is necessary for us to find that *Templeton* should be applied retroactively to persons in his position. The Commission urges a prospective application, or at the most, a limited retroactive application. *Templeton* itself did not specifically deal with this issue beyond applying the rule to the litigants in that case.

There is no rule of retroactive law carved into the United States Constitution or state constitution.[7] We must treat each case announcing a new rule of law on the basis of the facts which are unique to it. While this might lead to some confusion and uncertainty as to subsequent cases, this individual treatment is necessary. Courts have generally tended to apply some sort of retroactivity to new rules of law.[8] In the criminal law context, for instance, the United States Supreme Court recently stated that, subject to certain exceptions, "a decision of this court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered." *United States v. Johnson,* 457 U.S. 537, 562, 102 S.Ct. 2579, 2594, 73 L.Ed.2d 202, 222 (1982). Concerning civil cases, this court has held that retroactivity is the rule and prospectivity is the exception. *See Plumley v. Hale,* 594 P.2d 497, 502 (Alaska 1979) (absent

special circumstances, a new rule is binding in the case before the court and in all subsequent cases in which the point in question is raised regardless of when facts leading to the case occurred).

■ We have attempted in the past to deal with the problem of whether to apply a new rule of law prospectively or retroactively by formulating criteria by which to measure each case.[9] Utilization of these criteria provides a framework for consistency in treatment of future cases. We have articulated a number of standards which we have incorporated into the following four criteria when dealing with retroactivity in the civil context: 1) whether the holding either overrules prior law or decides an issue of first impression whose resolution was not foreshadowed; 2) whether the purpose and intended effect of the new rule of law is best accomplished by a retroactive or a prospective application; 3) the extent of reasonable reliance upon the old rule of law; and 4) the effect on the administration of justice of a retroactive application of the new rule of law.

### A. *The Threshold Test*

The first criterion, whether the holding overrules prior law or decides an issue of first impression, serves as a threshold test to determine whether a purely prospective application of a new rule of law is even at issue. If a holding is not new in the sense

7. *See United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982); *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Judd v. State,* 482 P.2d 273, 276 (Alaska 1971).

8. *See Solem v. Stumes,* — U.S. —, —, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (February 19, 1984).

9. *See Gray v. State,* 463 P.2d 897, 913 (Alaska 1970) (1) the purpose to be served by the new rule; 2) the effect on the administration of justice of a retroactive application of the new rule); *Judd v. State,* 482 P.2d at 278 (1) the purpose to be served by the new standards; 2) the extent of reliance by law enforcement authorities on the old standards; and 3) the effect on the administration of justice of a retroactive application of the new standards); *Moore v.*

*State,* 553 P.2d 8, 28 (Alaska 1976) (To be applied prospectively: 1) the decision must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; 2) we must evaluate the merits of retroactive or prospective application of the rule in light of its prior history, purpose and effect; 3) we must weigh the hardship and injustice of applying the rule to the litigants in the instant case); and *Plumley v. Hale,* 594 P.2d at 503(1) the holding is one of first impression, or overrules prior law, and was not foreshadowed in earlier decisions; 2) there has been justifiable reliance on an alternative interpretation of the law; 3) undue hardship would result from retroactive application; and 4) the purpose and intended effect of the holding is best accomplished by prospective application.)

described above, the question of prospectivity need not be examined further.[10]

In this instance the *Templeton* decision, in effect, overruled a presumptively valid regulation promulgated by the Commission.[11] Prior to *Templeton* itself there were no decisions of any court which had cast doubt on the validity of the regulation. Thus the rule announced in *Templeton* meets the threshold test and we must utilize the other criteria to resolve the issue of prospectivity. The other criteria are also relevant in deciding the extent to which a new rule should be accorded retroactivity.

B. *Purpose and Intended Effect of Templeton*

██ Once the threshold test has been met the next step in our analysis is to determine the purpose and intended effect of the *Templeton* decision. This is the single most important criterion to use in determining whether to apply a new rule of law retroactively or prospectively. As we stated in *Plumley v. Hale*, 594 P.2d 497, 504 (Alaska 1979), "[i]t is fundamental that the determination as to whether a decision will be prospectively or retroactively applied, is one guided by equitable principles...." (footnote omitted). The equities in these cases are largely dictated by the purpose and intended effect of the new rule.

The general purpose behind the Limited Entry Act is to regulate entry into commercial fishing "without unjust discrimination."[12] The Commission achieves this end by awarding points based on the hardship to the applicant if excluded from the fishery. The Commission then determines the

point level requirement based on the optimum level of use in each particular fishery. The initial point determination is to be made by weighing each applicant's hardship without unjust discrimination. *Isakson v. Rickey*, 550 P.2d 359, 363 (Alaska 1976).

Prior to *Templeton*, the Commission had interpreted the Limited Entry Act as requiring actual possession of a gear license as a prerequisite to income dependence points. In reversing the Commission's interpretation, we stated in *Templeton* that "allocating one permit between two partners solely on the fortuitous circumstances of which one held the gear license in two given years does not realistically weigh the relative hardship which each partner would suffer by denial of a permit."[13] We therefore held that to avoid "unjust discrimination" the CFEC must award special circumstances points on the basis of partnership fishing.

Our decision in *Templeton* required that the Commission avoid unjust discrimination by judging all applicants by standards which accurately reflect their relative hardship. Implicit in that requirement was a finding that point allocations made according to the Commission's earlier standards were inaccurate. Thus, in denying permits in reliance on those point allocations, the Commission had not avoided "unjust discrimination."

Moreover, as we stated in *Commercial Fisheries Entry Commission v. Apokedak*, 606 P.2d 1255, 1261 (Alaska 1980), one purpose of the Limited Entry Act is to "segregate hardship and non-hardship cases." In *Templeton*, we determined that

10. See *United States v. Johnson*, 457 U.S. 537, 550 n. 12, 102 S.Ct. 2579, 2587 n. 12, 73 L.Ed.2d 202, 214 n. 12 (1982) ("In the civil context, in contrast, the 'clear break' principle has usually been stated as the threshold test for determining whether or not a decision should be applied non-retroactively." Citing to *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)).

11. The regulation at issue is 20 AAC 05.620(1).

12. AS 16.43.010(a) provides:

It is the purpose of this chapter to promote the conservation and the sustained yield management of Alaska's fishery resource and the economic health and stability of commercial fishing in Alaska by regulating and controlling entry into the commercial fisheries in the public interest and without unjust discrimination.
See also, *Commercial Fisheries Entry Commission v. Apokedak*, 606 P.2d 1255 (Alaska 1980).

13. *Templeton*, 598 P.2d at 81 (footnotes omitted).

the Commission's interpretation of the Act was contrary to that purpose. Since the bulk of the Commission's point determinations for persons who fished as partners without gear licenses were made under the Commission's previous interpretation, the purposes of the Act have already been thwarted. Licenses have already either been awarded or denied. To apply *Templeton* prospectively only will serve no purpose.[14] Therefore, a retrospective application will best accomplish the purpose and intended effect of the Act and the rule announced in *Templeton.*

## C. *Reasonable Reliance*

The next criterion is closely related to the threshold test in substance although not in purpose. In this instance the extent of reliance on an old rule of law is used to further weigh the merits of a prospective versus a retrospective application and also to set the limits of retroactivity. In other words, rather than setting forth a determinative test, as the threshold criterion does, this criterion is used as a balancing factor.

As noted earlier, the Commission's regulation was presumptively valid and there were no court decisions prior to *Templeton* which challenged the validity of the regulation. We find that the CFEC did reasonably rely on its partnership policy and that the new rule announced in *Templeton* was not clearly foreseeable. We note that this criterion is generally designed to protect persons who innocently rely on judicial or legislative law rather than agencies which rely upon their own regulation. Reasonable as its reliance was it is still arguable that the Commission is not entitled to the benefits this criterion provides in this case. Regardless, this factor is of minimal importance where the purpose and intended effect of the new rule of law clearly justifies a retroactive application. The overriding

equities in favor of retroactivity clearly outweigh the agencies reliance in this instance.

## D. *Effect on the Administration of Justice*

The final criterion is the effect on the administration of justice of a retroactive application of the new rule. This factor is useful in determining not only whether a new rule should apply retroactively but also how far the application should extend. *State v. Glass,* 596 P.2d 10, 14 (Alaska 1979).

The CFEC urges that retroactive application be denied to avoid undue hardship to the administration of the limited entry system and to avoid excessive overissuance of permits. It cannot be denied that some hardship will befall the Commission if we apply *Templeton* retroactively. However, applicants who did not receive a permit because they fished as partners were treated unfairly and the harm to them will not be remedied if we apply the rule prospectively. As we stated in *Judd v. State:*[15]

> Since without question a value judgment is involved little can be added to the arguments presented in the cases except to say that once one realizes that any decision will involve an arbitrary classification which is not particularly defensible except in terms of its impact, then one has arrived at a starting point for making the necessary policy decisions.

A change in the law or the formation of a new rule will invariably lead to some inequitable results. For the following reasons we hold that a retroactive application of *Templeton* results in the fewest inequities.

The Commission states in its reply brief that "[t]his case suggests that [the] number [of *Templeton* claims] would be huge." No other information is provided articulat-

---

**14.** This case is very dissimilar to other cases dealing with the issue of retroactivity. Generally a new rule will have some significance to fact situations arising after the enunciation of the rule. In those cases a prospective application still serves some purpose. But where the law relates to an administrative issuance of permits

to a limited number of people, and the permit issuance has, in effect, already been completed, prospective application of the rule is inequitable.

**15.** 482 P.2d 273, 278 (Alaska 1971).

ing the actual number of *Templeton* claimants. Even assuming that there will be numerous claims and that the resolution of the claims will be time consuming, we feel the hardship to the CFEC is of secondary importance to the alternative hardship to individual fishermen. The purpose of the Commission is to regulate entry into the commercial fisheries. *See* AS 16.43.010. The administrative inconvenience to the Commission cannot outweigh the fundamental inequity which would result in depriving deserving claimants of limited entry permits. As we stated in *Commercial Fisheries Entry Commission v. Apokedak*, 606 P.2d 1255, 1266 (Alaska 1980), "[a]lthough the purpose of promoting administrative convenience is legitimate, it cannot outweigh the important right to engage in economic endeavor, which in some cases may involve the right to employment in the industry." (Footnotes omitted).

Furthermore, much of the potential hardship to the CFEC could have been avoided if it had acted with due diligence when the first sign of difficulties became apparent. The superior court issued an order on April 3, 1978 requiring the CFEC to give partnership points to Templeton. The Commission petitioned the supreme court for review of this order, and thereafter sent out letters to applicants announcing the 1978 period for additional point claims evidence. The CFEC, for its own protection, could have specifically requested partnership information pursuant to the lower court decision. The Commission could have waited until its review by this court was completed before making a final point determination. In this way the Commission would have been able to guard against excessive overissuance from that point.

A retroactive application of *Templeton* will not automatically lead to the issuance of permits. To receive a permit an appli-

cant must prove partnership, income dependence, and a point total at or above the issuance level. When retroactive application of a rule leads to an automatic reversal of a prior verdict, the effect on the administration of justice is serious. On the other hand, when a new rule only results in a new trial, the foreseeable consequences are less severe.[16] By applying *Templeton* retroactively, we are not requiring that the Commission automatically issue permits to applicants like Byayuk but merely that it consider their claim to partnership points.

The final consideration in this area is the effect of retroactivity on persons already granted permits. If excessive overissuance is the result of our decision then persons already in the fishery may be affected. In *Moore v. State*, 553 P.2d 8 (Alaska 1976), we expressed concern over the effect of a decision on innocent persons. In that case we held that the state must consult with local planning agencies prior to selling offshore oil and gas leases. In deciding to adopt the new law prospectively we noted that "once the disposition has occurred, the new owners or lessors also have a paramount interest in maintaining their rights to the land. We have no desire in this area, to upset settled transactions which were entered into in good faith."[17] In *Moore* we were concerned with giving the public a voice in the matter but they had no definite rights over the land.

The *Templeton* situation is easily distinguishable. The persons presently holding permits have no interest that is paramount over that of deserving *Templeton* claimants. In fact, the opposite is true. Many of the persons with permits would not have received one had the partnership claims initially been processed fairly. Moreover, the Commission may implement a "buyback" program to repurchase the excess permits under AS 16.43.310.[18] The statuto-

---

16. *See Rutherford v. State*, 486 P.2d 946, 956–957 (Alaska 1971) (Connor, J., dissenting).

17. *Moore v. State*, 553 P.2d at 28.

18. AS 16.43.310 reads in pertinent part:

When the optimum number of entry permits is less than the number of entry permits outstanding in a fishery, the commission shall establish and administer a buy-back fund for that fishery for the purpose of reducing the number of entry permits to the optimum number . . .

ry "buy-back" provisions will also help to alleviate any inequities to those persons presently in the fishery.

*Templeton* should be applied retroactively for the above stated reasons.

## III. EXTENT OF RETROACTIVITY

Having decided that *Templeton* merits retroactive application, we must now decide whether that retroactivity should be extended to final decisions.[19] The discussion on general retroactivity is wholly applicable to this issue. In essence, fairness dictates retroactive application to final decisions. A limited retroactive application would apply to those non-gear license partners whose cases have not been finally adjudicated by the Commission or, if they have, whose cases are still pending on direct review. Because of the length of time between the enactment of the Act and the *Templeton* decision and because the Commission has already granted or denied the bulk of the applications, it appears likely that most fishermen who could potentially benefit from the *Templeton* rule would be excluded by this limitation. If so, they would be treated differently from other fishermen whose position as of January 1, 1973 was legally indistinguishable from them. This difference in treatment is unfair since it is dependent on the fortuitous fact that their cases were processed more promptly than those of their colleagues who are able to take advantage of the *Templeton* rule. Thus, fairness, the impelling purpose of the *Templeton* rule, militates in favor of retroactive application to final decisions.

In this case Byayuk had filed a limited entry permit application with the CFEC prior to *Templeton*. We find that the *Templeton* rule should at least be extended to persons who have filed timely permit applications. Whether *Templeton* should

also be extended to persons who have not applied on time is a question which is not presented here and on which we express no opinion.

This decision applies to a finite, definable group of persons and it extends back to a definite date. Much of the hesitancy for applying a rule to final decisions stems from a concern that an overwhelming number of cases would be reopened.[20] It is generally regarded as too unfair to reopen cases which are many years old and a convenient line is therefore drawn at finality. That concern is less pronounced here.

Finally the Commission's own interpretation of a similar court decision and its immediate response to *Templeton* demonstrate that the CFEC might have anticipated this holding. In *Isakson v. Rickey* we held that the Commission wrongfully denied the claimants in that case an opportunity to apply for a permit since they owned gear licenses for the first time subsequent to January 1, 1973. We did not specifically address the issues of retroactivity but the Commission responded by reopening the application period for *Isakson* claims. Similarly, when *Templeton* was decided the CFEC proposed regulations which allowed applicants to adjust their allocation of points according to the rule announced in that case.[21] These regulations were to apply to past applicants who were denied permits due to inadequate points; in other words, applicants who had received a final determination. The CFEC eventually decided not to implement these regulations, but these proposals show that the Commission initially considered such retroactive application feasible.

## IV. FAILURE TO RAISE TEMPLETON CLAIMS

Finally, we must determine whether *Templeton* should be applied retroactively

---

**19.** An application of a new rule of law to persons with final decisions also encompasses persons in the adjudicatory process. In view of our determination that the *Templeton* decision should be extended to final decisions, the issue of finality raised by the CFEC is moot; Byayuk can claim partnership points whether his case was final or not.

**20.** *Cf. Desist v. United States,* 394 U.S. 244, 251, 89 S.Ct. 1030, 1035, 251, 22 L.Ed.2d 248, 256 (1969), *rehearing denied,* 395 U.S. 931, 89 S.Ct. 1766, 23 L.Ed.2d 251 (1969); *State v. Glass,* 596 P.2d 10, 14–15 (Alaska 1979).

**21.** September 26, 1979 News Release.

to persons who failed to raise the issue of partnership points prior to the final decision in their cases. Byayuk did not claim partnership points in his initial application. The Commission alleges that Byayuk's application became final at the point when he failed to request a hearing. We hold that, even assuming finality in 1978, the failure to raise the *Templeton* issue before the Commission does not bar our consideration of it in the instant case.

■ Res judicata generally bars litigation of an issue which has already been decided or which could have been decided in a prior proceeding. Our most recent discussion of administrative res judicata was in *Jeffries v. Glacier State Telephone Company*, 604 P.2d 4 (Alaska 1979). We recognized in that case that res judicata is applicable to administrative adjudicative decisions but that the doctrine is often applied there with less rigidity.[22] A case by case analysis is used to see if the application of res judicata is fair. In this case we determine that it is not.

In *Storrs v. Lutheran Hospitals and Homes Society of America, Inc.*, 609 P.2d 24, 28 (Alaska 1980), we noted that an objection to an administrative ruling must be made to the agency to preserve the objection, "at least when, as here, a complainant ... has had an ample opportunity to urge his objections at the administrative level." We compared this to a situation where the party has knowledge of facts of bias on the part of an arbitrator and remains silent nonetheless. *Id.* at 29 n. 13. In contrast, Byayuk had no knowledge or reason to know that the CFEC's partnership policy was incorrect. Thus, we cannot realistically require him to have raised this issue.

Even if Byayuk had raised the issue to the CFEC the issue is not within the scope of the agency's expertise. In *Templeton* we specifically stated that the Commission's interpretation of the statutory scheme did not involve its particularized expertise.[23] The concern of courts in hearing issues not raised below is that the judiciary is usurping the power of administrative agencies. That concern is irrelevant here. Courts should act when "the court can reach a fully informed decision without the benefit of having the views of the agency."[24]

Our decision to allow Byayuk to raise his *Templeton* claims is consistent with the general overriding concerns of fairness articulated throughout this opinion. As the United States Supreme Court stated in *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037, 1041 (1941):

> Rules and practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy.

We decline in this case to follow the general rule requiring a party to raise the issue before the administrative agency.[25]

---

**22.** *Jeffries*, 604 P.2d at 8. *See also Grose v. Cohen*, 406 F.2d 823, 824–5 (4th Cir.1969); *Hollywood Circle, Inc. v. Department of Alcohol Beverage Control*, 55 Cal.2d 728, 13 Cal.Rptr. 104, 361 P.2d 712, 714 (1961).

**23.** *Templeton*, 598 P.2d at 80. Of course, when Byayuk presents his *Templeton* claim to the Commission, the decision on whether or not to award him partnership points will involve the agency's expertise.

**24.** 2 Cooper, State Administrative Law 601 (1965).

**25.** This case fits squarely into the examples set forth in *Board of Public Instruction v. Finch*, 414 F.2d 1068 (5th Cir.1969), which demonstrate when a court will hear an appeal from an administrative agency on issues not raised below. The court will deal with an issue when the agency action is:

> (1) in excess of statutory authority ..., (2) likely to result in individual injustice ..., (3) disruptive of the legislative scheme ..., and (4) contrary to an important public policy extending beyond the rights of the individual litigants ...

414 F.2d at 1073 (citations omitted). *See also Myron v. Martin*, 670 F.2d 49, 52 (5th Cir.1982).

We affirm the remand to the CFEC to allow Byayuk to present evidence on his claim for income dependence points under *Templeton.* The portion of the order allowing Byayuk to submit evidence on his failure to meet the additional evidence deadline is vacated.

AFFIRMED as modified.[26]

---

**26.** The other issues raised by the parties are only relevant if we decline to apply *Templeton* retroactively to final determinations. Since we do extend *Templeton* to that level, we need not address the other issues.