**Phil CASHEN, Charles Adams, Jr. and Leonard Pavone, Appellants,**

v.

**STATE of Alaska, COMMERCIAL FISHERIES ENTRY COMMISSION, Appellee.**

No. 5866.

Supreme Court of Alaska.

Aug. 24, 1984.

Brad J. Brinkman, Findley and Brinkman, Juneau, for appellants.

Kenneth E. Vassar, Asst. Atty. Gen., Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

■ This case is one of a series involving applications for commercial fishing permits under Alaska's Limited Entry Act by persons who had fished as partners with holders of gear licenses.[1] Phil Cashen, Charles Adams, Jr. and Leonard Pavone all claim to have fished commercially as partners in 1971 or 1972, but did not hold gear licenses in their own names in one or both of those years. The applications of all three for limited entry permits were denied by the Commercial Fisheries Entry Commission (Commission) in 1975 and 1976.

In 1979, in *State, Commercial Fisheries Entry Commission v. Templeton*, 598 P.2d 77 (Alaska 1979), we held that the partners of gear license holders who were otherwise eligible to apply for permits were entitled to special circumstances points for economic dependence on a fishery, even if they themselves were not gear license holders. In 1980, Cashen, Adams and Pavone jointly requested that the Commission reconsider their applications in light of our holding in *Templeton*. The Commission refused to do so, and the applicants appealed to superior court. They now appeal the superior court's dismissal of their claim.

The issues presented in the cases of Adams and Pavone are identical to those resolved in our decision in *Commercial Fisheries Entry Commission v. Byayuk*, 684 P.2d 114 (Alaska 1984). In accordance with our holding in *Byayuk*, we reverse the trial court's dismissal of those two appeals. We remand the cases to the Commission to allow Adams and Pavone to present evidence in support of their claims for points under *Templeton*.[2]

1. The Limited Entry Act, AS 16.43.010—16.43.-990, was adopted in 1973 to regulate entry into the commercial fisheries of the state. Under AS 16.43.260, only persons who have harvested fishery resources commercially while participating in the fishery as holders of gear licenses are eligible to apply for limited entry permits. The Commercial Fisheries Entry Commission was established by the Act to accept applications and award permits on the basis of economic dependence on and past participation in the fishery.

AS 16.43.100, AS 16.43.250. The Commission awards points for income dependence, past participation, and other relevant factors, and issues permits to persons with sufficient points. *See State, Commercial Fisheries Entry Comm'n v. Templeton*, 598 P.2d 77 (Alaska 1979).

2. The appeals to the trial court of all three applicants were dismissed on the grounds that they were untimely, since their original applications for permits were denied in 1976. We held

Cashen's case, because of its unique facts, is not directly governed by our holding in *Byayuk*. For the reasons set forth below, however, we conclude that the reasoning of *Byayuk* requires that Cashen be afforded reconsideration in light of *Templeton*.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Phil Cashen fished as a crew member in the statewide power troll fishery from 1965 through 1970. During 1971 and 1972 he apparently arranged a partnership with another commercial fisherman. Cashen asserts that the two partners purchased a boat together and obtained a gear license in the name of Cashen's partner. Cashen purchased a gear license in his own name in 1973.

Cashen filed a timely application for a limited entry permit in 1975, along with a letter explaining his partnership status. His application was rejected, and the Commission informed him that he was ineligible to apply for a permit under AS 16.43.260(d), since he had not held a gear license prior to January 1, 1973.

In *Isakson v. Rickey*, 550 P.2d 359 (Alaska 1976), we held that the Commission's refusal to accept applications from persons who had not held gear licenses before January 1, 1973, violated the equal protection rights of those applicants. Following that decision, the Commission reopened the application period to allow persons affected by the *Isakson* decision to submit applications. In 1977, during this supplemental application period, Cashen met with an agent of the Commission, Caroline Lupro. Ms. Lupro filled out an application form for him, and apparently informed him that he could qualify for a maximum of 14 points. The application form was never filed.

In 1978, Cashen received a notice inviting him to submit supplementary evidence pur-

suant to 20 AAC 05.520(d)(1). He did not respond to this notice.

On February 1, 1980, Cashen submitted a request for a hearing, claiming that he was entitled to points for income dependence on the fishery during 1971 and 1972 under *Templeton*, and that he was therefore qualified for a limited entry permit. The Commission responded that Cashen's right to request a hearing had expired in 1975, and that, in any event, *Templeton* did not apply to him. Cashen's request for reconsideration was denied, and he appealed that denial to the superior court. His appeal was dismissed and this appeal followed.

## II. RETROACTIVITY OF TEMPLETON

In *State, Commercial Fisheries Entry Commission v. Templeton*, 598 P.2d 77, 81 (Alaska 1979), we held that the Commission's interpretation of its regulations, which allowed it to deny income dependence points to persons who had fished as equal partners with gear license holders, was inconsistent with the purpose of the Limited Entry Act. In *Commercial Fisheries Entry Commission v. Byayuk*, 684 P.2d 114 (Alaska 1984), we held that *Templeton* should be applied retroactively to persons who submitted timely applications for limited entry permits even if their applications had been denied. We expressed no opinion on the question of whether *Templeton* should be extended to persons who did not apply on time. *Id.* at 121.

Although Cashen submitted a timely permit application in 1975, his application was rejected because he had not held a gear license in his own name prior to January 1, 1973. *See Commercial Fisheries Entry Commission v. Apokedak*, 680 P.2d 486 (Alaska 1984). After our decision in *Isakson v. Rickey*, 550 P.2d 359 (Alaska 1976), Cashen became eligible to apply for a limited entry permit, since he had held a gear license in 1973. He did not submit an application during the *Isakson* period.

in *Byayuk* that *Templeton* should be applied retroactively to persons whose applications had been finally denied. Since the reasoning of *Byayuk* applies to these applicants, they are enti-

tled to reconsideration of their applications in light of *Templeton,* regardless of the timeliness of their appeals.

Thus, although Cashen's partnership claims are similar to Byayuk's, he is not situated entirely similarly to him, since he never filed a valid application with the Commission. We must therefore determine whether the reasons for retroactive application of *Templeton* set forth in *Byayuk* require that *Templeton* be applied to persons like Cashen.

In *Byayuk*, we outlined four criteria to be considered in deciding whether, and how far, to apply decisions retroactively:

1) whether the holding either overrules prior law or decides an issue of first impression whose resolution was not foreshadowed; 2) whether the purpose and intended effect of the new rule of law is best accomplished by a retroactive or a prospective application; 3) the extent of reasonable reliance upon the old rule of law; and 4) the effect on the administration of justice of a retroactive application of the new rule of law.

*Byayuk*, 684 P.2d at 117. We determined that the purpose of *Templeton*—to insure "that the Commission avoid[s] unjust discrimination by judging all applicants by standards which accurately reflect their relative hardship," *id.* at 118—could only be effected through a retroactive application. Balancing the need to effect the purpose of *Templeton* against the potential administrative disruption caused by retroactive application, we determined that *Templeton* should be applied retroactively to allow Byayuk to claim points for partnership.

We conclude that the same considerations require that *Templeton* be applied retroactively in Cashen's case. Cashen failed to submit an application when he was eligible to do so only after an. agent of the Commission totalled the points available to him without including income dependence points for the years he fished as a partner. His actions in consulting with the Commission and having his points tallied by an agent of the Commission were sufficient, as a matter of law, to demonstrate that he failed to file an application in part because

of the Commission's erroneous partnership policy.

As we noted in *Byayuk*, the purpose of *Templeton* was to prevent the Commission from allocating points in a manner which caused unjust discrimination. *Id.* at 118. The Commission's previous partnership policy discriminated against persons who failed to submit applications because they could not receive partnership points, as well as those who were not awarded permits because they did not receive partnership points. The purpose of *Templeton* is best effected if both sets of applicants are allowed to have their points redetermined in accordance with *Templeton*.

In *Byayuk*, we held that the need to effect the purpose of *Templeton* outweighed the burden imposed on the Commission in forcing it to reconsider the timely applications of persons with partnership claims. This burden will not be increased significantly if *Templeton* is applied retroactively in cases like Cashen's. Even though Cashen never filed an application at a time when he was eligible to do so, he did file an application in 1975, and consulted with the Commission about reapplying in 1977. He also received a notice entitling him to submit new evidence in 1978. His name, like Byayuk's, was thus in the Commission's files as a potential permit recipient, and, like Byayuk, he was part of a pool of applicants who might have received permits had they submitted sufficient new evidence in 1978. In requiring the Commission to accept new applications from persons in Cashen's position, we would not be forcing it to reopen the application period or to determine the eligibility of persons who have never before applied. The increased burden on the Commission is thus not sufficient to outweigh the need to effect the purpose of *Templeton*.[3]

■ We therefore hold that *Templeton* should be applied retroactively to per-

---

**3.** We leave the question of whether *Templeton* should be applied to persons who never sub- mitted applications for a case where that issue is before us.

sons who applied for limited entry permits, and whose names are therefore in the Commission's records, and who have shown that they failed to submit valid applications when they were eligible to do so because of the Commission's erroneous partnership policy. Cashen has made such a showing. Accordingly, we remand his case to the Commission to allow him to submit a new application and to present evidence on his claim for income dependence points under *Templeton*.

REVERSED.